UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APPARATUS LLC,<br><br>                              Plaintiff,<br>      v.<br><br>TROY-CSL LIGHTING, INC.,<br><br>                              Defendant. | ECF Case<br>Civil Action No. 16 Civ. 6892<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Apparatus LLC ("Plaintiff" or "Apparatus"), by and through its attorneys, complain and allege against defendant Troy-CSL Lighting, Inc. ("Defendant" or "Troy") as follows:

**INTRODUCTION**

1.      This is an action for trademark and trade dress infringement, false designation of origin, and unfair competition stemming from Troy's infringement of Apparatus' distinctive line of "Cloud" light fixtures ("Cloud Fixture").

2.      Apparatus is an innovative, critically-lauded designer and manufacturer of light fixtures, furniture, and decorative objects. Appearing frequently in leading publications such as *The New York Times*, *T Magazine*, *Vogue*, *Vanity Fair, Architectural Digest*, and the *San Francisco Chronicle*, Apparatus' designs are favored by celebrities and taste makers, furnishing elegant homes and cutting edge hot spots alike.

3.      Among Apparatus' most prominent and coveted products is its Cloud Fixture, a graceful cluster of diaphanous orbs suspended by delicate brass chains and clustered around a central light source.



The Apparatus Cloud Fixture

4.      As more fully set forth below, since Apparatus introduced the Cloud Fixture it has garnered both substantial sales success and unsolicited critical acclaim. As a result, buyers, retailers, architects, and interior designers—as well as their customers—have come to recognize the configuration of the Cloud Fixture not merely as an iconoclastic, alluring design, but as a unique symbol of Apparatus.

5.      Consequently, Apparatus has accrued common law trade dress rights in the Cloud Fixture.

6.      On information and belief, the Defendant—with full knowledge of and disregard for Apparatus' rights—has designed, manufactured, promoted, and sold a practically indistinguishable version of the Cloud Fixture (the "Infringing Fixture"):



Defendant's Infringing Fixture

7.      In designing the Infringing Fixture, Defendant reproduced every aspect of the Cloud Fixture, including its overall parabolic shape, its cluster of frosted orbs suspended by thin chains and clustered around a central light source.

8.      Moreover, Defendant markets the Infringing Fixture under the name *Nuage*—the French word for "cloud."

9.      The virtual uniformity of the products at issue is likely to mislead members of the trade and general consumers as to the source, sponsorship, or association of the Infringing Fixture, stoking the erroneous belief that it is produced by or otherwise connected to Apparatus.

10.     By virtue of its infringement, Defendant has created and profited from consumer confusion, while diminishing Apparatus' reputation for exclusivity, quality, and craftsmanship.

11.     Accordingly, Apparatus brings this action for trademark infringement, trade dress infringement, and false designation of origin pursuant to Sections 32 and 43(a) of the Lanham Act, and for related claims under New York law.

## THE PARTIES

12.     Plaintiff Apparatus is a limited liability company existing under the laws of New York, having a principal place of business at 124 West 30th Street, New York, New York 10001.

13.     On information and belief, defendant Troy is a corporation existing under the laws of New York with a principal place of business of 14625 East Clark Avenue, City of Industry, California 91745.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338(a)-(b) for claims arising from violations of Sections 32 and Section 43 of the Lanham Act.

15.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for claims arising from violations of the statutory and common law of the State of New York.

16.     This Court has personal jurisdiction over Defendant because Defendant is a domestic corporation incorporated in New York, and because on information and belief Defendant sold the Infringing Fixtures forming the subject matter of this action to customers in New York and in this Judicial District. In addition, this Court has personal jurisdiction over Defendant because on information and belief, Defendant has regularly transacted business in New York, regularly done or solicited business in New York, contracted to supply products in New York, and derived substantial revenues from products sold and used in New York, including the Infringing Fixtures.

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FACTUAL BACKGROUND

### Apparatus and its Rights in the Cloud Fixture

18.     Apparatus is a New York-based design studio celebrated for creating experimental and vintage-inspired lighting fixtures, furniture, and decorative objects that fuse contemporary materials with sculptural forms.

19.     Apparatus was cofounded in 2011 by Jeremy Anderson and creative director Gabriel Hendifar, who, prior to launching the company, was a fashion and interior designer working with couture fashion labels. Together, Mr. Hendifar and Mr. Anderson designed light fixtures for Mr. Hendifar's apartment. Encouraged by the enthusiastic response to their DIY weekend projects, Mr. Hendifar and Mr. Anderson relocated from Los Angeles to New York and launched Apparatus in 2011.

20.     A mere five years after its founding, Apparatus now employs a team of thirty-eight people, selling over 3,000 pieces annually to clients around the world.

21.     The design community has celebrated Apparatus as an exciting new voice and emerging leader in the field. By way of example, in 2013, the New York Chapter of the International Furnishings and Design Association ("IFDA") lauded Mr. Hendifar's and Mr. Anderson's work with Apparatus, naming them Rising Stars of Interior Design for Product Design.

22.     Apparatus has garnered critical praise from taste makers and globally influential publications, having been featured in *The New York Times*, *T Magazine*, *Vogue*, *Vanity Fair*, *Architectural Digest*, and the *San Francisco Chronicle*, to name just a few. In its September 2016 edition, *Architectural Digest* devoted an entire article to feting the opening of Apparatus'

studio space, extolling the firm as "trendsetting," and applauding Mr. Hendifar as a "creative mastermind" responsible for designing "the brand's coveted light fixtures, furnishings, and objets d'art."

23.     Apparatus' Cloud Fixture debuted in 2012, quickly becoming the company's preeminent piece. The design of the Cloud Fixture features a pendulous arrangement of a number of glass orbs frosted by hand to create an irregular texture reminiscent of 19th Century décor. Using jewelry hardware, the glass orbs are hung from hand-finished brass chains around a central light source. The light is obscured by and refracted through a surrounding cluster of frosted glass orbs, resulting in a warm, diffuse glow creating the overall effect of a hanging cloud (collectively, the "Cloud Fixture Trade Dress").

24.     The Cloud Fixture represents one of Apparatus' first designs. Mr. Hendifar's aim in creating the piece was to adopt the silhouette of and vintage materials found in traditional chandeliers, while reimagining the interplay of their component parts. The Cloud Fixture uses brass hardware—renowned for its strength and structural stability—rendered in a delicate, refined jewelry chain, suspending featherweight glass orbs, which both soften and amplify light. The Cloud Fixture is therefore a study in contrast, juxtaposing the solidity of metal and the ephemeral lightness of glass.

25.     The Cloud Fixture is available in models incorporating 19, 37, or 73 orbs; the 19- and 37-orb models use three central light sources, while the 73-orb model uses six light sources. Finding the right arrangement and selection of the number of light sources required significant experimentation and painstaking development. Finally, after months of trial and error, Apparatus devised a successful configuration placing a single orb at the center of the Cloud Fixture, with multiples of six orbs creating the surrounding rings.

26.     Ultimately, the process of developing the Cloud Fixture—not merely in imagining a beautiful concept but in solving the myriad technical problems its groundbreaking design engendered—has demanded a substantial investment of Plaintiff's time, effort, and resources.

27.     Every Cloud Fixture is painstakingly assembled by hand; as such its method of manufacture is intricate, time-consuming, and costly.

28.     The Cloud Fixture has earned Apparatus critical acclaim from publications at the forefront of design. For example, the above-referenced September 2016 *Architectural Digest* did not merely picture the Cloud Fixture, but *explicitly cited it by name* as Apparatus' "signature" piece. *Architectural Digest* also published an article picturing and referencing the Cloud Fixture by name in 2014. Likewise, in its September 4, 2015 edition, *The New York Times Style Magazine* published an article profiling Apparatus' founders, titled "Inside the Inspired Home of Two Brooklyn Lighting Designers." The article pointed out that "[s]ome of [Apparatus'] signature designs, like the sensuous, hand-weathered Cloud lamp, *are already approaching icon status*" (emphasis added).

29.     Several other prominent outlets have praised the Cloud Fixture. Recommending the Cloud Fixture to its affluent, discerning readers, the *Financial Times* praised the piece as "mesmeric" in its recurring "How To Spend It" column. Moreover, in a post profiling comedian Chelsea Handler's "Upbeat Office Style," lifestyle site Popsugar.com extolled the Cloud Fixture as "[a] perfect fit for the elegant but slightly whimsical vibe of the office … [reminding] us of an upside-down balloon bouquet." The Cloud Fixture has also featured in *The New York Times, Los Angeles Times*, *Chicago Tribune*, *Home and Design*, and *Interior Design*, among others. Copies of articles celebrating the Cloud Fixture are attached as <u>Exhibit A</u>.

30.     Apparatus has invested considerable resources in advertising and promoting the Cloud Fixture on a global basis. For instance, Apparatus has promoted and displayed the Cloud Fixture at industry events and trade shows, including the IFDA-sponsored International Contemporary Furniture Fair in New York, as well as the West Edge Design Fair in Southern California, and Salone del Mobile in Milan, Italy. In 2015, Apparatus won the Best Booth award at IFDA; the Cloud Fixture was prominently displayed at the center of Apparatus' award-winning booth.



Apparatus' 2015 IFDA "Best Booth" Award-Winning Installation

31.     Apparatus further promotes the Cloud Fixture online via its website accessible at apparatusstudio.com. Apparatus also boasts more than 70,000 (entirely unpaid for) followers of its Instagram account, to which it frequently posts images of the Cloud Fixture; indeed, one Instagram post from early 2016 featuring the Cloud Fixture tallied nearly 1300 "likes," while a 2015 post of the Cloud Fixture earned more than 800. Apparatus generally and the Cloud Fixture specifically feature prominently on Pinterest as well.

32.     To maintain the highest standards of quality, Apparatus owns and operates a production studio that finishes and assembles the components of Apparatus-designed lighting fixtures, including the Cloud Fixture. The Cloud Fixture is sold through a curated selection of authorized dealers, including, for example, BDDW, an exclusive furniture gallery located in this Judicial District.

33.     On the strength of its stunning design, Apparatus' marketing efforts, and unsolicited critical plaudits, the Cloud Fixture has earned in excess of $3.6 million dollars in sales in the United States alone since its introduction in 2012, singlehandedly accounting for more than fifteen percent of Apparatus' total revenue. As testament to the Cloud Fixture's growing popularity, revenues from sales of the piece vaulted from under $100,000 in 2012 to more than $1,000,000 in both 2014 and 2015.

34.     As a result of the product's commercial success, the Cloud Fixture Trade Dress is recognized by the design industry, the media, and consumers alike as a unique, innovative, and unmistakable icon of Apparatus.

35.     The configuration of the Cloud Fixture Trade Dress is not essential to its utility as a light fixture. Likewise, the design of the Cloud Fixture Trade Dress is not dictated by reasons of cost, expedience, or efficiency. Finally, Apparatus' exclusive use of the Cloud Fixture Trade

Dress does not place competitors at any non-reputation-related disadvantage. As such, the Cloud Fixture Trade Dress is not functional under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

36.   Apparatus has consistently used the trademark CLOUD in connection with the Cloud Fixture since at least as early as May 1, 2012.

37.   In 2016, Plaintiff secured a registration with the United States Patent and Trademark Office for the trademark CLOUD in connection with "Electric lighting fixtures; LED (Light Emitting Diode) lighting fixtures for use in display, commercial, industrial, residential, and architectural accent lighting applications; lighting apparatus for sports arenas; lighting apparatus for theatres, clubs and discotheques; lighting apparatus, namely, lighting installations; lighting fixtures, in class 11" (the "Registration"). The Registration is valid and enforceable. A copy of the Registration is attached as Exhibit B.

### Defendant's Infringing Actions

38.   On information and belief, Defendant designs, manufactures, and sells interior and exterior lighting fixtures for home and commercial use.

39.   Defendant sells its products to the public through a network of distributors, including Build.com, Lamps Plus, Wayfair.com, and Lumens.

40.   Defendant promotes its products via its website accessible at troy-lighting.com ("Defendant's Website")

41.   In 2014, long after Apparatus established exclusive rights in the design of the Cloud Fixture and its CLOUD trademark, Defendant began manufacturing, promoting, and selling its Infringing Fixture.

42.     As set out in the accompanying images, the design of the Infringing Fixture literally reproduces the key elements of the Cloud Fixture Trade Dress—namely, frosted orbs clustered around a light source, and suspended by metal chains in a teardrop shape:



Genuine Cloud Fixture                              Infringing Fixture

43.     On information and belief, Defendant is fully aware of Apparatus' Cloud Fixture, its reputation for quality and craftsmanship, and the renown and goodwill that it has engendered among members of the trade, the media, and the public.

44.     On information and belief, Troy operated a booth at the 2015 New York IFDA International Contemporary Furniture Fair—the same event at which Apparatus accepted the honors for best booth. As noted, Apparatus' award-winning booth prominently featured the Cloud Fixture. On information and belief, one or more representatives of Troy visited Apparatus' celebrated booth.

45.     In any event, Defendants' prior knowledge of the Cloud Fixture is laid bare by its selection of the mark *nuage* for use in connection with the Infringing Fixture—*nuage* is the

French translation of the word "cloud" (see screenshot taken August 31, 2016 of the entry for the word *nuage* taken from English-French online dictionary <u>Linguee.com</u>, attached as <u>Exhibit C</u>).

46.     On information and belief, Defendant knowingly and deliberately designed the Infringing Fixture to overwhelmingly resemble the Cloud Fixture in order to pass off the Infringing Fixture as the Cloud Fixture, and/or to mislead members of the trade and consumers into believing that the Infringing Fixture was designed, manufactured, and distributed by, or with the approval or sponsorship of, Apparatus. Such confusion is only deepened by Defendant's use of the French translation of Apparatus' federally protected CLOUD trademark.

47.     The risk of confusion does not end at the point of sale, as those coming into contact with installations of the Infringing Fixture mistakenly presume either that the piece is the Cloud Fixture, or is otherwise associated with or sanctioned by Apparatus.

48.     On information and belief, Defendant's misappropriation of the Cloud Fixture Trade Dress, as well as its adoption of the CLOUD trademark by adopting the French translation of "cloud," has given rise to multiple documented instances of confusion.

49.     In February 2015, designer Kate Reynolds emailed Apparatus to relay that Candelabra, a store in Mount Pleasant, South Carolina, had posted at least two images on Instagram misrepresenting the Cloud Fixture as the "Nuage Chandelier" (emphasis added) (see <u>Exhibit D</u>):

- Candelabra's first post repurposes a photo previously appearing on a lifestyle blog depicting the Cloud Fixture ***hanging in the home of Apparatus' co-founders***. The caption reads: "***Spotted our Nuage Chandelier on the Luxe and Lillies Blog! Get the look on shopcandelabra***! This chandelier is one of our new favorites!"

- Candelabra's second post includes an image of the Cloud Fixture hanging in Chelsea Handler's home office (also featured in the Popsugar.com posting noted above), which was appointed by interior designer Shannon Wollack. The caption reads: "We are having some serious office envy today…@swollack created this workspace for Chelsea Handler ***and used the Nuage Chandelier***…to die for!!"

50. In August 2014, Apparatus received an email from Michael Purdy, co-proprietor of Jay Jeffers (a designer and retailer of fine furniture, art and accessories—including Apparatus' Cloud Fixture), attaching a link to the Infringing Fixture on Defendant's website, and warning that "[t]his is a ***really close knock off***…" (emphasis added) (see Exhibit D).

51. On May 27, 2016, designer Nicki Clendening emailed a photograph of the Willa Jean restaurant in New Orleans to Mr. Hendifar, mistakenly believing that the Cloud Fixture was "well represented" in the restaurant's design. The photo, however, discloses that it is actually the Infringing Fixture—not Plaintiff's Cloud Fixture—that appears in the restaurant (see Exhibit D).

52. In September 2014, Apparatus received an email from Erika Templeton, Editorial Director of *Interiors & Sources* magazine, noting that she "received a product pitch from Troy Lighting for their Nuage product, ***and it's so shocking similar to the Cloud design***," and asking whether Troy's Infringing Fixture was "on Apparatus Studio's radar?" Ms. Templeton's email includes a snippet of Troy's product pitch, which lauds the Infringing Fixture's "***cloud-like appearance***," and promises to transport viewers of Defendant's piece to "***cloud nine***" (emphasis added) (see Exhibit D).

53. In October 2014, Apparatus received an email from designer Karalee LaRochelle attaching an advertisement for Defendant's Infringing Fixture, stating "Please tell me that you

are getting a piece of this and that someone hasn't ***ripped off your beautiful cloud design***!!!???" (emphasis added) (see <u>Exhibit D</u>).

54.     Defendant is indisputably aware of Apparatus' exclusive rights in the configuration of the Cloud Fixture. On November 26, 2014, Plaintiff's prior counsel contacted Defendant to alert them that the Infringing Fixture impermissibly replicates the Cloud Fixture's unique design, and demanding that Defendant immediately cease its sales and promotion of the Infringing Fixture. Moreover, in subsequent letters to Defendant's attorneys dated January 16, 2015 and March 25, 2015, Apparatus' prior counsel not only cited the obvious similarity between the Cloud and Infringing Fixtures, but also that Defendant's use of the term *nuage* constitutes a blatant reference to and infringement of Plaintiff's federally registered CLOUD trademark. Copies of Plaintiff's notice letters are attached as <u>Exhibit E</u>.

55.     On information and belief, Defendant has temporarily suspended its sale and distribution of the Infringing Fixture due to concerns regarding the strength of the fixture's chain and its tendency to break. On further information and belief, Defendant intends to resume sales of the Infringing Fixture, as evidenced by the fact that it continues to promote the Infringing Fixture on its website (see screenshot of Defendant's Website taken September 1, 2016, attached as <u>Exhibit F</u>).

56.     Given Defendant's admitted doubts as to the integrity of its chain, on information and belief, there is a risk that, at a minimum, previously sold and installed Infringing Fixtures may be structurally unsound. On further information and belief, should the chain on any Infringing Fixture fail, such mishap could likely undermine Apparatus' deserved reputation for quality and workmanship as a result of the mistaken belief among designers, decorators, and other members of the trade, as well as consumers that the Infringing Fixture was produced by

Apparatus—or even that the design of the Cloud Fixture is inherently unreliable. Such risk is magnified by virtue of the fact that the Infringing Fixture (like the Cloud Fixture) is suspended from the ceiling by its central chain—consequently, the failure of any Infringing Fixture's chain could likely result in significant property damage, and worse yet, extremely serious physical harm to those below.

57.     Defendant's misappropriation of the Cloud Fixture Trade Dress has caused and will continue to cause confusion among members of the trade and consumers alike as to the source, sponsorship, and affiliation of the Infringing Fixture, diminishing Apparatus' reputation for ingenuity, innovation, craftsmanship, and exclusivity.

58.     The loss of goodwill caused by Defendant's willful infringement of Apparatus' Cloud Fixture Trade Dress and federally registered CLOUD trademark in designing and marketing the Infringing Fixture has irreparably harmed, and unless enjoined, will continue to irreparably harm Apparatus.

## FIRST CLAIM FOR RELIEF

### Trade Dress Infringement – 15 U.S.C. § 1125(a)

59.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 58 as if fully set forth herein.

60.     The Cloud Fixture Trade Dress is non-functional and has acquired secondary meaning among members of the trade and consumers as a symbol of Apparatus.

61.     The design of Defendant's Infringing Fixture misappropriates every element of the Cloud Fixture Trade Dress, and is confusingly similar to the Cloud Fixture.

62.     Without Apparatus' permission, authorization, license, or consent, Defendant adopted each element of the Cloud Fixture Trade Dress for use in the design of the Infringing Fixture.

63.     By sourcing, distributing, promoting, advertising, marketing, offering for sale, and selling Infringing Fixtures to members of the trade and ultimately to consumers, Defendant has used Plaintiff's Cloud Fixture Trade Dress in interstate commerce and in this Judicial District.

64.     Defendant's sourcing, distributing, promoting, advertising, marketing, offering for sale, and sale of Infringing Fixtures has caused confusion, mistake, or deception as to the origin of the Infringing Fixtures, and falsely conveyed that the Infringing Fixtures originate from or are endorsed or authorized by Apparatus.

65.     Even to the extent that buyers, whether members of the trade or ordinary consumers, purchase Infringing Fixtures with present knowledge that they do not emanate from Apparatus and are not genuine Cloud Fixtures, other members of the trade and the public at large encountering the Infringing Fixtures after their installation are likely to mistakenly believe that they are genuine Cloud Fixtures, or are endorsed, sponsored, or authorized by Apparatus, thereby creating actionable post-sale confusion.

66.     Defendant's adoption of the Cloud Fixture Trade Dress therefore constitutes trade dress infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

67.     On information and belief, Defendant intended to confuse, mislead, or deceive the public as to the source, sponsorship, or origin of the Infringing Fixtures, and to profit from the goodwill invested in the Cloud Fixtures. On further information and belief, such intent has borne

fruit, as members of the trade and consumers have and continue to suffer confusion as to the source, origin, or affiliation of the Infringing Fixture.

68.     By reason of Defendant's willful acts, Apparatus has been damaged and will continue to suffer damage to its business and reputation unless Defendant is restrained by this Court from further infringement.

69.     Apparatus has no adequate remedy at law.

70.     In light of the foregoing, Apparatus is entitled to and demands injunctive relief prohibiting Defendant from using the Cloud Fixture Trade Dress or any mark or design confusingly similar thereto, and to recover all damages that Apparatus has sustained as a result of Defendant's infringement, and all profits obtained by Defendant from its sales of Infringing Fixtures, and to recover all costs and expenses incurred by Apparatus in connection with this action, in an amount to be determined pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

### False Designation of Origin – 15 U.S.C. § 1125(a)

71.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 70 as if fully set forth herein.

72.     The Cloud Fixture Trade Dress has developed secondary meaning and is recognized as a unique symbol of the Plaintiff.

73.     The Cloud Fixture Trade Dress is non-functional.

74.     Defendant's display, promotion, advertising, distribution, sale, and offering for sale of Infringing Fixtures has and is likely to continue to confuse, mislead, or deceive consumers, the public, and the trade as to their origin, source, sponsorship, or affiliation, and is intended and likely to cause such parties to mistakenly believe that the Infringing Fixtures were

authorized, sponsored, approved, endorsed, or licensed by Apparatus, or that Defendant and its products are otherwise affiliated with Apparatus.

75.     Defendant's actions therefore constitute false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76.     By reason of Defendant's willful acts, Apparatus has been damaged and will continue to suffer damage to its business and reputation unless Defendant is restrained by this Court from further infringement.

77.     Apparatus has no adequate remedy at law.

78.     As a result, Apparatus is entitled to and demands injunctive relief prohibiting Defendant from using the Cloud Fixture Trade Dress or any mark or design confusingly similar thereto, and to recover all damages that Apparatus has sustained as a result of Defendant's infringement, and all profits obtained by Defendant from its Infringing Fixture, and to recover all costs and expenses incurred by Apparatus in connection with this action, in an amount to be determined pursuant to 15 U.S.C. § 1117(a).

### THIRD CLAIM FOR RELIEF

### Trademark Infringement – 15 U.S.C. § 1114

79.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 78 as if fully set forth herein.

80.     The Registration is valid, subsisting, incontestable, and in full force and effect in connection with "Electric lighting fixtures; LED (Light Emitting Diode) lighting fixtures for use in display, commercial, industrial, residential, and architectural accent lighting applications; lighting apparatus for sports arenas; lighting apparatus for theatres, clubs and discotheques; lighting apparatus, namely, lighting installations; lighting fixtures."

81.     Defendant has and is using the word *nuage* in connection with the Infringing Fixtures. The word *nuage* is a literal and direct translation of the word "cloud," which, by virtue of the Registration, is exclusively reserved to Apparatus for use in connection with lighting products.

82.     On information and belief, French is a modern, well-known language that is among the most prevalent foreign languages spoken in the United States. (See Exhibit G, a summary statement of the U.S. Census Bureau finding that more than 2 million respondents to the 2010 United States Census reported that they primarily speak French in the home. Moreover, the same report also found that more than ninety percent of French speakers in the home are also proficient in English.)

83.     On information and belief, the many French-speaking architects, designers, and interior decorators, as well as consumers at large, will stop and translate the word *nuage* into its direct, literal English equivalent—"cloud."

84.     The CLOUD trademark is merely suggestive of Apparatus' Cloud Fixture and is inherently distinctive. Moreover, by reason of the Cloud Fixture's sales success, promotion, and extensive, unsolicited editorial coverage, the CLOUD trademark has acquired substantial secondary meaning and considerable commercial strength.

85.     The meaning of Defendant's *nuage* trademark is identical to Apparatus' CLOUD trademark.

86.     Defendant has and continues to use its infringing *nuage* trademark on its Infringing Fixture, which is virtually indistinguishable from Apparatus' Cloud Fixture.

87.     On information and belief, Defendant intentionally adopted its *nuage* trademark as a direct reference to Apparatus' federally registered CLOUD trademark in order to further

infer to members of the trade, consumers, and the public at large that the Infringing Fixtures are genuine Cloud Fixtures, or are licensed by, associated with, or otherwise connected to Apparatus, when no such license, association, or connection exists.

88.     Defendant's acts therefore constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

89.     By reason of Defendant's willful infringement, Apparatus has been damaged and will continue to suffer damage to its business and reputation unless Defendant is restrained by this Court from further infringement.

90.     Apparatus has no adequate remedy at law.

91.     As a result, Apparatus is entitled to and demands injunctive relief prohibiting Defendant from using the *nuage* trademark or any other mark or design confusingly similar thereto in connection with the Infringing Fixture or any other product or category of products enumerated in the Cloud Registration, and to recover all damages that Apparatus has sustained as a result of Defendant's infringement, and all profits obtained by Defendant from its sales of Infringing Fixtures, and to recover all costs and expenses incurred by Apparatus in connection with this action, in an amount to be determined pursuant to 15 U.S.C. § 1117(a).

### FOURTH CLAIM FOR RELIEF

**Unfair Competition in Violation of New York State Common Law**

92.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 91 as if fully set forth herein.

93.     Apparatus owns all right, title, and interest in and to the Cloud Fixture Trade Dress, including common law rights.

20

94.     Apparatus further owns all right, title, and interest in and to the CLOUD trademark, as reflected in the Registration.

95.     Without Plaintiff's authorization, on information and belief, Defendant knowingly misappropriated the Cloud Fixture Trade Dress for use in connection with the Infringing Fixtures, which are substantially indistinguishable from and confusingly similar to Apparatus' genuine Cloud Fixtures.

96.     Moreover, without authorization, on information and belief, Defendant knowingly used the French translation of Plaintiff's CLOUD trademark in connection with the Infringing Fixtures in order to further falsely suggest that the Infringing Fixtures are sponsored by, affiliated with, or otherwise related to Apparatus.

97.     Defendant's sales of Infringing Fixtures has caused, and, unless enjoined, will likely continue to cause members of the trade, consumers, and the public to mistakenly conclude that the Infringing Fixtures originate from and/or are sponsored, authorized, or endorsed by Apparatus.

98.     Defendant's acts therefore constitute unfair competition in violation of the common law of the State of New York.

99.     On information and belief, Defendant has profited from its unlawful actions and has been unjustly enriched to the detriment of Apparatus, causing Apparatus damages in an amount to be determined at trial.

100.    Apparatus has been irreparably harmed and, unless enjoined by this Court, will continue to be irreparably harmed by Defendant's sales of Infringing Fixtures.

101.    Apparatus has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

**Violation of New York Deceptive and Unfair Trade Practices Act (N.Y. Gen. Bus. L. § 349)**

102.    Plaintiff repeats and realleges the allegations of paragraphs 1 to 101 as if fully set forth herein.

103.    Defendant's misappropriation of the Cloud Fixture Trade Dress for use in connection with the Infringing Fixtures is consumer-facing, and has deceived and is likely to continue to deceive members of the trade, consumers, and the public at large as to the source, sponsorship, and affiliation of the Infringing Fixture, causing damage to the public.

104.    Moreover, on information and belief Defendant's deliberate adoption of the French translation of Plaintiff's CLOUD trademark in connection with the Infringing Fixtures was intended to falsely suggest and has suggested that the Infringing Fixtures are sponsored by, affiliated with, or otherwise related to Apparatus.

105.    Defendant's misappropriation of the Cloud Fixture Trade Dress and CLOUD trademark was willful, deliberate, and in knowing disregard of Apparatus' rights.

106.    Defendant's acts therefore constitute deceptive and unfair trade practices in violation of Section 349 of the General Business Law of the State of New York.

107.    Defendant's acts have caused and will continue to cause immediate, irreparable harm to Apparatus, and, unless enjoined, will continue to damage Apparatus and mislead members of the trade, consumers, and the public.

108.    Apparatus has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays:

A.     For a final judgment that Defendant has engaged in trade dress infringement, false designation of origin, and trademark infringement in violation of Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), unfair competition in violation of the common laws of the State of New York, and deceptive acts and practices in violation of Section 349 of the New York General Business Law; and

B.     For entry of an Order preliminarily and permanently enjoining Defendant and its parents, subsidiaries, affiliates, officers, agents, servants, employees, attorneys, and all persons and entities acting in concert and participation with them from:

1.     manufacturing, marketing, advertising, promoting, displaying, exhibiting, offering for sale, selling, purchasing, importing, distributing, or otherwise trafficking in the Infringing Fixture;

2.     manufacturing, marketing, advertising, promoting, displaying, exhibiting, offering for sale, selling, purchasing, importing, distributing, or otherwise trafficking in any product adopting a design or configuration confusingly similar to the Cloud Fixture Trade Dress;

3.     using any trademark, design, designation of origin, or description (including, without limitation, the word *nuage* or any other translation or variation of the word "cloud") that copies, imitates, references, or is otherwise confusingly similar to Plaintiff's CLOUD trademark;

4.     applying to register or registering in the U.S. Patent and Trademark Office or in any state trademark registry the design and/or configuration of the

23

Infringing Fixture, or any other trade dress that simulates, reproduces, copies, imitates, or is otherwise confusingly similar to the Cloud Fixture Trade Dress, or any trademark that copies, imitates, references, or is otherwise confusingly similar to Plaintiff's CLOUD trademark;

5.   ordering an accounting by Defendant to Plaintiff of any profits gained from sales of the Infringing Fixture;

6.   awarding damages to Plaintiff, including for injury to Plaintiff's business reputation and goodwill, and all other damages arising out of Defendant's acts of infringement, false designation of origin, and unfair competition in an amount to be determined;

7.   awarding Plaintiff's attorneys' fees and costs;

8.   ordering Defendant to recall any and all units of the Infringing Fixture from distributors and retailers, and to deliver to Plaintiff for destruction or other disposition all remaining inventory of the Infringing Fixtures in the Defendant's possession, as well as all advertisements and promotional or marketing materials related thereto;

9.   ordering Defendant to file with this Court and to serve on Plaintiff within ten (10) days after the entry of injunctive relief a written report, under oath, setting forth in detail the manner and form in which Defendant has complied with such Order; and

10.   awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all issues so triable.

Dated: September 1, 2016

Respectfully submitted,

GOTTLIEB, RACKMAN & REISMAN, P.C.

By: *Marc P. Misthal*

Marc P. Misthal
Jeffrey M. Kaden
Jonathan A. Malki
270 Madison Avenue
New York, New York 10016
(212) 684-3900
mmisthal@grr.com
jkaden@grr.com
jmalki@grr.com

*Attorneys for Plaintiff Apparatus LLC*